**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

| | | |
|---|---|---|
| *Rod J. Rosenstein*<br>*United States Attorney*<br><br>*Joshua L. Kaul*<br>*Assistant United States Attorney* | *36 South Charles Street*<br>*Fourth Floor*<br>*Baltimore, Maryland 21201* | *DIRECT: 410-209-4815*<br>*MAIN: 410-209-4800*<br>*FAX: 410-962-3091*<br>*TTY/TDD: 410-962-4462* |

April 15, 2013

Ivan Bates, Esq.
Bates & Garcia, P.C.
201 North Charles Street, Suite 1900
Baltimore, MD 21201

   Re: United States v. Austin Roberts III,
     <u>Criminal No. ELH-11-358</u>

Dear Mr. ~~Saunders~~ Bates:

   This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by ~~April 26~~ May 10, 2013, it will be deemed withdrawn. The terms of the agreement are as follows:

## <u>Offense of Conviction</u>

   1. The Defendant agrees to plead guilty to Count One of the Superseding Indictment now pending against him, which charges him with conspiring to distribute and possess with intent to distribute one kilogram or more of heroin, five kilograms or more of cocaine, and a quantity of cocaine base, in violation of 21 U.S.C. § 846. The Defendant admits that he is, in fact, guilty of this offense and will so advise the Court.

## <u>Elements of the Offense</u>

   2. The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

A.     That two or more persons agreed to distribute and possess with intent to distribute one kilogram or more of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, and a quantity of a mixture or substance containing a detectable amount of cocaine base, a Schedule II controlled substance;

B.     That the Defendant was a party to, or member of, that agreement;

C.     That the Defendant joined the agreement or conspiracy knowing of its objective to distribute and possess with intent to distribute heroin, cocaine, and cocaine base and intending to join together with at least one other alleged conspirator to achieve those objectives; and

D.     That the conspiracy occurred in the District of Maryland.

### Penalties

3.     The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is a term of life imprisonment, a fine of ten-million dollars, and a term of supervised release. There is a mandatory minimum sentence of 10 years' imprisonment and five years of supervised release. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked – even on the last day of the term – and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

### Waiver of Rights

4.     The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

---

[1]Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

a.      If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.      If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

d.      The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e.      If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

g.      If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal

-3-

from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

### "C" Plea: Advisory Sentencing Guidelines Apply

5.      The parties stipulate and agree pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure that the sentence outlined in Paragraph 10, below, is an appropriate disposition of the case. The Defendant understands that a sentencing guidelines range for this case (henceforth the "advisory guidelines range") will be determined by the Court pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998.

### Factual and Advisory Guidelines Stipulation

6.      This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto, which this Office would prove beyond a reasonable doubt.

7.      The parties stipulate and agree that as set forth in the Pre-Plea Investigation Criminal History, the Defendant is a career offender as defined in U.S.S.G. §4B1.1(a), that his base offense level is accordingly 37, and that his criminal history category is VI.

This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. §3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

8.      The parties stipulate and agree that the Defendant is a career offender as defined in U.S.S.G. §4B1.1(a) and that his criminal history category is therefore VI.

9.      This Office and the Defendant agree that with respect to the calculation of criminal history and the advisory guidelines range, no other criminal history factors, offense

characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute. However, the parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

### Rule 11(c)(1)(C) Plea

10.     The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of imprisonment of **19 years** is the appropriate disposition of this case. This agreement does not affect the Court's discretion to impose any lawful term of supervised release or to set any lawful conditions of supervised release pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). If the Court rejects this plea agreement, either party can withdraw from this plea agreement under Federal Rule of Criminal Procedure 11(d)(2)(A), and the Defendant will be informed that he may withdraw his plea.

### Forfeiture

11.     The Defendant understands that the Court will, upon acceptance of his guilty plea, enter an order of forfeiture as part of his sentence, and that the order of forfeiture will include assets directly traceable to his offense, substitute assets and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense. The Defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

### Assisting the Government with Regard to the Forfeiture

12.     The Defendant agrees to assist fully in the forfeiture of the foregoing assets. The Defendant agrees to disclose all of his assets and sources of income to the United States, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including but not limited to executing any and all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture. The Defendant further agrees that he will not assist any third party in asserting a claim to the forfeited assets in an ancillary proceeding and that he will testify truthfully in any such proceeding.

### Waiver of Further Review of Forfeiture

13.     The Defendant further agrees to waive all constitutional, legal and

equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment.  The Defendant also agrees not to challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this agreement, and will not assist any third party with regard to such challenge or review or with regard to the filing of a petition for remission of forfeiture.

### Waiver of Appeal

14.  In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a)  The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction.

b)  The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds 19 years; and (ii) this Office reserves the right to appeal any term of imprisonment to the extent that it is below 19 years.

c)  Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d)  The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

-6-

## Obstruction or Other Violations of Law

15.     The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case.  In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. §3C1.1, (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence.   The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Entire Agreement

16.     This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case.   The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By:  _____/s/_____
Joshua L. Kaul
Assistant United States Attorney

-7-

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

May 10, 2013
_____
Date

_____
Austin Roberts III


I am Austin Roberts III's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

May 10, 2013
_____
Date

_____
Ivan Bates, Esq.

-8-



## Attachment A

*If the case had proceeded to trial, the Government would have proven the following facts beyond a reasonable doubt. This statement of facts does not constitute all of the facts provable by the Government.*

From 2007 until his arrest in December 2012, Defendant Austin Roberts III conspired to distribute, and in fact distributed, heroin and cocaine. The Defendant conspired to distribute these narcotics with Ronnie Bivens, Maurice Hardy, Andrew Jackson, and several other individuals. During the course of the conspiracy, the Defendant distributed or directed the distribution of well over 50 kilograms of cocaine and a kilogram of heroin. Further, the conspiracy involved, and it was foreseeable to the Defendant that the conspiracy would involve, the distribution and the possession with intent to distribute of a quantity of cocaine base.

The Defendant distributed multiple kilograms of cocaine to Maurice Hardy on several occasions during the course of the conspiracy. For example, in a call on May 11, 2011, Hardy informed another individual that his people had just come through – that is, that the Defendant would soon be supplying Hardy with narcotics. Hardy stated that he got 7 of them but they want 31.5; Hardy was implying, in other words, that he would be obtaining seven kilograms of cocaine for $31,500 per kilogram. The following day, the Defendant, Hardy, and Jackson met in the parking lot of Chesapeake Treasures in Salisbury, Maryland. During this meeting, Jackson transferred a package from the vehicle he was using to Hardy's vehicle, and Hardy transferred a package to Jackson's vehicle. Hardy then entered the Defendant's vehicle (in which the Defendant had remained), and exited after a short period of time. All three vehicles subsequently left the parking lot. Shortly after this meeting, law enforcement conducted a traffic stop of the vehicle that Jackson was driving. A subsequent search of that vehicle resulted in the recovery from hidden compartments of over $160,000 in U.S. currency. On May 12, 2011, in sum, Jackson, at the direction and on behalf of the Defendant, provided Hardy with several kilograms of cocaine in exchange for a significant quantity of U.S. currency.

On June 6, 2011, Hardy drove from Salisbury to Baltimore, Maryland, where he met with the Defendant in the parking lot of a gas station. There, the Defendant transferred a bag containing narcotics from his vehicle to Hardy's vehicle, and retrieved a different bag containing U.S. currency from Hardy's vehicle. Intercepted phone calls that took place prior to this transaction indicate that in this transaction, Hardy was obtaining one kilogram of cocaine for Tereek Nutter alone. Intercepted phone calls that took place after this transaction indicate that after his meeting with the Defendant, Hardy distributed cocaine to individuals in addition to Nutter and distributed five grams of heroin to Arnold Williams. Two days later, Hardy drove from Salisbury to Severn, Maryland, where he met with Jackson and obtained a quantity of narcotics that Jackson was providing to the Hardy on behalf of the Defendant. Approximately three weeks after that meeting, law enforcement searched the vehicle that Jackson had driven to the meeting and recovered over $70,000 in U.S. currency from a hidden compartment that also contained cocaine residue.

In addition, the Defendant distributed multiple kilograms of cocaine and/or quantities of heroin to Ronnie Bivens on several occasions during the course of the conspiracy. Notably, on February 16, 2010, in Salisbury, Maryland, law enforcement recovered over 850 grams of cocaine, nearly 200 grams of cocaine base, and 6.6 grams of heroin that belonged to Bivens. On March 11, 2010, law enforcement executed a search warrant at a residence at which Bivens "stashed" narcotics and recovered additional quantities of cocaine, cocaine base, and heroin.

For well over a year following his indictment on state and federal charges, the Defendant intentionally eluded arrest. On July 19, 2011, an officer patrolling the New Jersey Turnpike conducted a traffic stop on a vehicle that the Defendant was driving. During the stop, the Defendant provided a California driver's license indicating that his name was John Nash. The officer conducting the stop subsequently learned that John Nash was an alias for the Defendant, who was wanted, and requested backup. After backup officers arrived, the Defendant was instructed to exit the vehicle and the officers continued to investigate the Defendant's identity. The Defendant then ran down the right shoulder of the highway and across the highway, and walked onto an interchange ramp, before the officers lost sight of him.

The Defendant subsequently obtained identification in the name of Marshall Finney. In August 2012, a California Highway Patrol officer attempted to stop a vehicle that the Defendant was driving and in which another individual was a passenger. The Defendant fled on foot, however, and escaped from the officer. A subsequent search of the vehicle the Defendant was driving resulted in the recovery of over $29,000 in U.S. currency from a hidden compartment. On December 4, 2012, the Defendant was arrested in San Diego, California. The Defendant initially provided a California driver's license in the name of William Ratner, but he subsequently admitted his true identity.