IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AUSTIN ROBERTS, III,

    *Petitioner*,

    v.

UNITED STATES OF AMERICA,

    *Respondent*.

Criminal No. ELH-11-00358
Related Civil No.:  ELH-13-3866

## MEMORANDUM OPINION

Austin Roberts, III, Petitioner, filed a motion to vacate under 28 U.S.C. § 2255 (ECF 405), supported by a memorandum.  ECF 405-1 (collectively, the "Petition").  The government opposes the Petition (ECF 416) and Roberts replied.  ECF 420.  Thereafter, Petitioner filed a "Motion For Permission To Support Claim Raised in 28 U.S.C. § 2255."  ECF 433.  I granted that motion (ECF 456) and also ordered the government to supplement its response.  *Id.*  The government's supplemental response is docketed at ECF 459.  Recently, at the Court's request (ECF 565), the government submitted another supplement, docketed at ECF 572.

In particular, Roberts alleges ineffective assistance of counsel in connection with what he maintains was his improper designation as a career offender.  ECF 405-1 at 2.  He also complains that his lawyer was ineffective because, at his sentencing, the court allegedly used the wrong Sentencing Guidelines Manual.  In Roberts's view, this violated the Ex Post Facto Clause of the Constitution.  *Id.* at 4-5; *see* Constitution, Art. I, § 9.

No hearing is necessary to resolve the Petition.  For the reasons that follow, I shall deny the Petition.

# I.     Procedural and Factual Background

## A.

This Post Conviction case began on December 23, 2013, when Mr. Roberts, who was then self-represented, filed his Petition.  ECF 405.  Thereafter, on January 8, 2014, I ordered the government to respond.  ECF 406.  The government responded on March 10, 2014 (ECF 416) and Mr. Roberts replied on April 16, 2014.  ECF 420.  Then, on August 12, 2014, Mr. Roberts sought permission to support his claim.  ECF 433.  I granted that request by Order of November 6, 2015. ECF 456.  And, I also directed the government to supplement its opposition.  *Id.*  The government responded, with exhibits, on December 11, 2015.  ECF 459.  Mr. Roberts replied.  ECF 460.

In the interim, in June 2015 the Supreme Court decided *Johnson v. United States*, ___ U.S. ___, 135 S. Ct. 2551 (2015).  As a result, the Office of the Federal Public Defender ("OFPD") for the District of Maryland sought to represent many individuals in cases with potential *Johnson* claims.  Mr. Roberts was one of them.  ECF 464.  The OFPD's motion, filed in March 2016, was granted.  *Id.*  Thereafter, on May 25, 2016, on behalf of Mr. Roberts, the OFPD filed a supplemental motion to vacate under 28 U.S.C. § 2255.  ECF 468.  Counsel argued that, in light of *Johnson v. United States*, Mr. Roberts did not qualify as a career offender.  *Id.*  However, because of volume of such cases, the OFPD said, *id.* at 2:  "Due to time constraints, counsel cannot, at this time, fully brief the issues presented in this petition."

On March 6, 2017, the Supreme Court decided *Beckles v. United States*, ___ U.S. ___, 137 S. Ct. 886 (2017).  There, the Supreme Court held that the Sentencing Guidelines are not subject to vagueness challenges under the Due Process Clause.  *Id.* at 890; *see id.* at 892.  Of relevance here, the Court addressed the discretionary aspect of the career offender designation.  It determined that the advisory sentencing guidelines are not subject to challenges under *Johnson*.  *Id.* at 892.

Subsequently, on April 26, 2017, Mr. Roberts, through counsel, filed "Notice Of Dismissal of 28 U.S.C. § 2255 Motion." ECF 516. The submission made reference to dismissal of the supplemental petition, *i.e.*, ECF 468. Thereafter, by Order of the same date (ECF 517), I directed the Clerk to close the civil case. In doing so, I inadvertently overlooked that the notice of dismissal (ECF 516) pertained only to the Supplemental Petition (ECF 468), and not to Mr. Roberts's original Petition (ECF 405). The Order closed the entire civil case.[1]

The Court heard nothing further from counsel for the parties or from Mr. Roberts, until June 21, 2018. On that date Mr. Roberts filed a motion to reduce sentence pursuant to Amendment 782 of the United States Sentencing Guidelines ("U.S.S.G."). ECF 541. I issued an Order on October 28, 2019, directing the government to respond. ECF 565.

On November 19, 2019, the Court received correspondence from Mr. Roberts (ECF 566), inquiring as to the status of his original § 2255 Petition. That letter prompted a review of the docket by this Court. At that time, I discovered that the entire post-conviction case was closed in 2017. The Court issued an Order on December 2, 2019 (ECF 570), asking the government for a status report. The government responded on December 9, 2019. ECF 572. In its response, the government advised, *inter alia*, that Petitioner's motion for sentence reduction is under review by the OPFD for possible representation of Mr. Roberts.

The Court sincerely regrets the delay in regard to the resolution of ECF 405. However, no prejudice has ensued, because there is no merit to the Petition.

---

[1] Unfortunately, because the entire civil case was marked as closed, the Court did not receive notifications from the Clerk of the pending post conviction petition. And, the gavel was removed in regard to ECF 405 on the criminal docket.

**B.**

Petitioner was initially indicted on June 29, 2011. ECF 1. A Superseding Indictment was filed on September 14, 2011, naming defendant and eight others. ECF 44. In particular, the defendant was charged in Count One with conspiracy to distribute and possess with intent to distribute one kilogram of heroin, five kilograms or more of cocaine, and cocaine base, in violation of 21 U.S.C. § 841(a)(1).

On May 10, 2013, Roberts entered a plea of guilty to Count One. ECF 329; ECF 330 (Plea Agreement). In the Plea Agreement, the parties stipulated that Roberts was a career offender under U.S.S.G. § 4B1.1(a), with a base offense level of 37 and a criminal history category of VI. ECF 330, ¶¶ 7, 8. Of significance here, the plea was entered pursuant to Fed. R. Crim. P. 11(c)(1)(C), by which the parties stipulated to a sentence of 228 months of imprisonment (19 years) as the appropriate disposition of the case. *Id.* ¶ 10; *see also* ECF 369 (Transcript of proceedings of May 10, 2013).

The Plea Agreement also contained a stipulated Statement of Facts. ECF 330 at 9-10. Notably, the defendant agreed that he conspired to distribute "over 50 kilograms of cocaine and a kilogram of heroin," as well as cocaine base. *Id.* at 9. And, in the Plea Agreement, Roberts waived his right to appeal, except as to any sentence in excess of 19 years of imprisonment. *Id.* ¶ 14.

The transcript of the Rule 11 proceeding is docketed at ECF 545. At that proceeding, the prosecution recounted, *inter alia*, that between 2007 and December 2012, the defendant conspired to distribute, distributed, and directed the distribution "of well over 50 kilograms of cocaine and a kilogram of heroin." *Id.* at 40; *see also* ECF 330 at 9.[2] In addition, the conspiracy involved an

---

[2] The Superseding Indictment specifies that the conspiracy spanned the period of March 2007 to September 9, 2011. ECF 44 at 1. The government makes a similar assertion in ECF 416 at 4. The Arrest Warrant reflects that it was issued June 29, 2011, but Roberts was not arrested

unspecified quantity of cocaine base. *Id.* During the investigation, phone calls were intercepted, search warrants were executed, the defendant used several false identities, and he twice fled from law enforcement to avoid apprehension. ECF 545 at 40-44.

At the guilty plea proceeding, while under oath (*id.* at 6), the defendant acknowledged the accuracy of the government's factual summary. *Id.* at 44. He also admitted that he had committed the crimes summarized by the government. *Id.* at 44.

The Presentence Report ("PSR") was docketed on July 16, 2013. ECF 370. Under the equivalency table found at U.S.S.G. § 2B1.1, Application Note 8(D), the marijuana equivalent for the agreed drug quantity amounted to 11,000 kilograms. *Id.* ¶ 17. Under U.S.S.G. § 2D1.1(c)(2), this gave rise to a base offense level of 36, based on a quantity of at least 10,000 kilograms but less than 30,000 kilograms of marijuana. *Id.*

In the absence of a career offender designation, with an offense level of 36, and three deductions for acceptance of responsibility under U.S.S.G. § 3E1.1(a), (b), Roberts would have had a final offense level of 33. *Id.* ¶ 24. However, ¶ 25 of the PSR reflects a career offender designation. Therefore, instead of a base offense level of 36, Roberts had a base offense level of 37, under U.S.S.G. § 4B1.1. And, with three deductions for acceptance of responsibility (*id.*¶ 26), he had a final offense level of 34. *Id.* ¶ 27.

The career offender designation was based on two prior felony drug convictions. In particular, in 1995 the defendant was convicted in the Circuit Court for Wicomico County, Maryland, Case 95CR0051, of Felonious Possession of Cocaine. *Id.* ¶ 39. The PSR indicates that, according to the charging instrument, "the defendant possessed cocaine in sufficient quantity to

---

until January 15, 2013. ECF 276. The docket reflects that Roberts had his initial appearance on January 15, 2013. ECF 273.

reasonably indicate under all circumstances an intent to distribute." *Id.* ¶ 40. Roberts received a 14-year sentence, with all but four years suspended, to be followed by probation. *Id.* ¶ 39. He later violated his probation, for which he received a 10-year sentence, consecutive to the five-year sentence imposed in Case 97CR0587, for the offense of Reckless Endangerment, as referenced in ¶¶ 41, 42. *See id.* ¶ 39.

The second qualifying predicate was a 1999 conviction in Case 02-K-99-000326, in the Circuit Court for Anne Arundel County, Maryland. *Id.* ¶ 43. The offense was possession of CDS with intent to distribute, for which Roberts received a sentence of two years' imprisonment. *Id.*; *see also id.* ¶ 44.

The PSR reflected a total of 11 criminal history points, which equated to a criminal history category of V. *Id.* ¶ 48. However, based on the career offender designation, the defendant's criminal history category was increased to VI. *Id.* ¶ 49.

Under the Sentencing Guidelines, in the absence of a career offender designation, with a final adjusted offense level of 33, and a criminal history category of V, Roberts' advisory sentencing guideline range called for a period of incarceration ranging between 210 and 262 months. And, according to the PSR, with a final offense level of 34 and a criminal history category of VI, the advisory guideline range called for a period of incarceration of 262 to 327 months. By statute, Mr. Roberts faced a mandatory minimum term of imprisonment of 10 years, with a maximum term of imprisonment of life, under 21 U.S.C. § 841(b)(1)(A).

Sentencing was held on August 9, 2013. ECF 382. In accordance with the terms of the C plea, the Court imposed a term of imprisonment of 228 months. *See* ECF 383 (Judgment); ECF 384 (Statement of Reasons). The sentence of 228 months was well below the career offender guideline range and towards the low end of the non-career offender guideline range.

The sentencing transcript is docketed at ECF 399. At sentencing, the government described the case as "serious," noting that it involved "a massive amount of drugs . . . ." *Id.* at 7. Mr. Roberts allocuted, asking the Court to "go along with [his] plea . . . ." *Id.* at 11.

Roberts was advised of his appellate rights. ECF 399 at 14. No appeal was noted. The Petition followed on December 23, 2013. ECF 405.

## II.     Contentions

Roberts complains that his lawyer was ineffective "for allowing the defendant to be sentenced under the Career Criminal Act when it was improperly had." ECF 405-1 at 2. Further, he contends that his prior State convictions did not qualify as predicate offenses for career offender purposes. *Id.* He asserts: "Counsel failed to take notice of the Government's failure to provide Shepard Worthy Documents to invoke the § 4B1.1." *Id.* at 2-3. In his view, the district court committed "plain error" in relying on the predicate felonies as qualifying offenses. *Id.* at 3. Therefore, he argues that his sentence violated his due process rights. *Id.* at 4.

In addition, Roberts complains of ineffective assistance of counsel because, at sentencing in August 2013, the Court made "use of the more severe" November 2012 Sentencing Guidelines Manual. *Id.* at 4. In his view, this violated the ex post facto law. *Id.* And, he argues that defense counsel's "failure to challenge such blatant points, constitutes ineffective assistance of counsel." *Id.* at 6.

The government responds that "Roberts should be thanking his counsel for negotiating a favorable deal, rather than arguing, with no basis in law or fact, that his counsel was ineffective." ECF 416 at 3. In this regard, the government maintains that, in light of the C plea, the Court did not impose a career offender sentence, notwithstanding the parties' stipulation that Roberts was a career offender. *Id.* at 3.

7

With respect to Petitioner's complaint regarding the version of the Sentencing Guidelines Manual used at sentencing, the government argues that this contention is without merit. It points out that the Petition does not reveal which Guidelines Manual Roberts claims the Court should have used, or how it would have affected his sentence. ECF 416 at 4.

To the extent that Roberts is complaining that he did not receive the benefit of the Fair Sentencing Act of 2010, the government contends that it does not apply because Roberts's guidelines were "driven solely by the quantities of powder cocaine and heroin" and not crack cocaine. *Id.*; *see also id.* at 2 n.1. Therefore, any change in the sentencing guidelines with respect to crack versus powder cocaine had no bearing on his case. *Id.* "This means," asserts the government, that "the Fair Sentencing Act of 2010 had no application to Roberts' case, and . . . any objection by counsel to the use of the November 2012 sentencing guidelines manual on Fair Sentencing Act grounds would have been fruitless." *Id.* at 5.

### III. Legal Standards

#### A.

Section 2255(a) of Title 28 of the United States Code provides relief to a prisoner in federal custody only on specific grounds: that the sentence was imposed in violation of the Constitution or laws of the United States; that the court was without jurisdiction to impose such a sentence; that the sentence was in excess of the maximum authorized by law; or that the sentence is otherwise subject to collateral attack. *See Hill v. United States*, 368 U.S. 424, 426-27 (1962) (citing 28 U.S.C. § 2255); *United States v. Hodge*, 902 F.3d 420, 426 (4th Cir. 2018); *United States v. Middleton*, 883 F.3d 485 (4th Cir. 2018); *United States v. Newbold*, 791 F.3d 455, 459 (4th Cir. 2015).

Pursuant to 28 U.S.C. § 2255(b), the court must hold a hearing "[u]nless the motion and the files and records conclusively show that the prisoner is entitled to no relief. . . ."  *See*, *e.g.*, *United States v. White*, 366 F.3d 291, 302 (4th Cir. 2004).  Courts have determined that a hearing is not necessary where "the motion . . . fail[s] to allege sufficient facts or circumstances upon which the elements of constitutionally deficient performance might properly be found [or] where the defendant has failed to present any affidavits or other evidentiary support for the naked assertions contained in his motion."  *United States v. Taylor*, 139 F.3d 924, 933 (D.C. Cir. 1998) (internal quotation marks and citation omitted); *accord United States v. McGill*, 11 F.3d 223, 225-26 (1st Cir. 1993).  On the other hand, a hearing is generally "required when a movant presents a colorable Sixth Amendment claim showing disputed material facts and a credibility determination is necessary to resolve this issue."  *United States v. Robertson*, 219 Fed. App'x 286, 286 (4th Cir. 2007); *see United States v. Ray*, 547 Fed. App'x 343, 345 (4th Cir. 2013).

In reviewing the Petition, the Court is mindful that a self-represented litigant is generally "held to a 'less stringent standard' than is a lawyer, and the Court must liberally construe his claims, no matter how 'inartfully' pled." *Morrison v. United States*, RDB-12-3607, 2014 WL 979201, at *2 (D. Md. Mar. 12, 2014) (internal citations omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *Bala v. Commonwealth of Virginia Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013) (same).  Nevertheless, in my view, no hearing is necessary to resolve the Petition.

**B.**

As noted, Roberts claims that his attorney provided ineffective assistance of counsel. Ineffective assistance of counsel is a well recognized basis for relief under § 2255. *See generally Missouri v. Frye*, 566 U.S. 133 (2012); *Lafler v. Cooper*, 566 U.S. 156 (2012); *Padilla v. Kentucky*, 559 U.S. 356 (2010). This is because the Sixth Amendment to the Constitution guarantees a criminal defendant the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Buck v. Davis*, ____ U.S. ____, 137 S. Ct. 759, 775 (2017).

To mount a successful challenge under 28 U.S.C. § 2255 based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in *Strickland*, 466 U.S. at 687–88. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000); *United States v. Winbush*, 922 F.3d 227, 229 (4th Cir. 2019); *United States v. Carthorne*, 878 F.3d 458, 465 (4th Cir. 2017); *United States v. Powell*, 850 F.3d 145, 149 (4th Cir. 2017). First, the petitioner must show that counsel's performance was deficient. Second, the petitioner must show that he was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687; *see Buck*, 137 S. Ct. at 775; *Chaidez v. United States*, 568 U.S. 342, 348 (2013); *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *Winbush*, 922 F.3d at 229; *Powell*, 850 F.3d at 149; *United States v. Rangel*, 781 F.3d 736, 742 (4th Cir. 2015); *United States v. Dyess*, 730 F.3d 354, 361 (4th Cir. 2013); *United States v. Baker*, 719 F.3d 313, 318 (4th Cir. 2013); *Richardson v. Branker*, 668 F.3d 128, 139 (4th Cir. 2012); *United States v. Higgs*, 663 F.3d 726, 735 (4th Cir. 2011).

The first prong is known as the "performance prong," which relates to professional competence. The petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness," as measured by "prevailing professional norms." *Strickland,* 466 U.S. at 688; *see Harrington v. Richter*, 562 U.S. 86, 104 (2011); *Powell*, 850 F.3d

at 149. The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Richter*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690).

As the Supreme Court recently reiterated, the "first prong sets a high bar." *Buck*, 137 S. Ct. at 775; *see also Powell*, 850 F.3d at 149. In *Padilla*, the Court said, 559 U.S. at 371: "Surmounting *Strickland's* high bar is never an easy task." Notably, a "lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Buck*, 137 S.Ct. at 775 (citation omitted). Consequently, the performance prong is "'difficult'" to establish. *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008) (quoting *James v. Harrison*, 389 F.3d 450, 457 (4th Cir. 2004)).

To satisfy the high bar, the burden is on the petitioner to establish "'that counsel made errors so serious that his "counsel" was not functioning as the "counsel" guaranteed by the Sixth Amendment.'" *Richter*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 687). Notably, "the *Strickland* standard must be applied with scrupulous care," *Richter*, 562 U.S. at 105, and "the standard of judging counsel's representation is a most deferential one." *Id.* Indeed, "[k]eenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Lawrence*, 517 F.3d at 708 (quoting *Strickland, 446 U.S.* at 689)); *see Cullen v. Pinholster*, 563 U.S. 170, 189 (2011); *Richter*, 562 U.S. at 104; *Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015).

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Strickland*, 466 U.S. at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." *Id.* at 694; *see also Buck*, 137 S. Ct. at 776; *Lafler*, 566 U.S. at 163; *Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993). "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 687. Therefore, a petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

With respect to deficient performance of counsel at sentencing, the Supreme Court has described prejudice "to mean the existence of a reasonable probability that the defendant would have been sentenced differently if the error had not occurred." *United States v. Feldman*, ___ Fed. App'x ___, 2019 WL 6492488, at *2 (4th Cir. Dec. 3, 2019) (citing *Sears v. Upton*, 561 U.S. 945, 956 (2010)). In particular, "the Court must consider whether a reasonable probability exists that the result of the proceeding would have been different absent the complained – of error." *Feldman*, 2019 WL 6492488, at *3 n.2 (citing *Molina- Martinez v. United States*, ___ U.S. ___, 136 S. Ct. 1338, 1345 (2016); *United States v. Rangel*, 781 F.3d 736, 745-46 (4th Cir. 2015)).

However, a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). This is because failure to satisfy either prong is fatal to a petitioner's claim. As a result, "there is no reason for a court...to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

**C.**

"[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill*, 368 U.S. at 428). In other words, the movant must establish (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law so fundamental as to render the entire proceeding invalid. *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

Moreover, the scope of collateral attack under § 2255 is narrower than on appeal, and a "'collateral challenge may not do service for an appeal.'" *Foster v. Chatman*, ___ U.S. ___, 136 S. Ct. 1737, 1758 (2016) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)). Thus, any failure to raise a claim on direct appeal constitutes a procedural default that bars presentation of the claim in a § 2255 motion, unless the petitioner can demonstrate "cause and actual prejudice resulting from the errors of which he complains," or "actual innocence." *United States v. Pettiford*, 612 F.3d 270, 280 (4th Cir. 2010) (citing *United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999)). *See Bousley v. United States*, 523 U.S. 614, 621 (1998) ("Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal.") (internal quotations and citations omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *see also Dretke v. Haley*, 541 U.S. 386, 393 (2004); *Reed v. Farley*, 512 U.S. 339, 354 (1994) ("the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice resulting from the alleged violation.'"); *Finch v. McKoy*, 914 F.3d 292, 298 (4th Cir. 2019) (discussing requirements for a claim of actual innocence); *United States v. Linder*, 552 F.3d 391 (4th Cir. 2009).

Under the "cause and prejudice" standard, the petitioner must show: (1) cause for not raising the claim of error on direct appeal; and (2) actual prejudice from the alleged error. *Bousley*,

523 U.S. at 622; *see also Dretke*, 541 U.S. at 393; *Reed*, 512 U.S. at 354; *Frady*, 456 U.S. at 167-68.

In order to show cause for failure to raise a claim of error on direct appeal, a petitioner must prove that "some objective factor external to the defense such as the novelty of the claim or a denial of effective assistance of counsel" impeded the efforts to raise the issue earlier. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991); *see also Carrier*, 477 U.S. at 492 ("[C]ause . . . requires a showing of some external impediment preventing counsel from constructing or raising the claim."); *Mikalajunas*, 186 F.3d at 493 (movant must demonstrate "something external to the defense, such as the novelty of the claim or a denial of effect assistance of counsel"). Additionally, the alleged error cannot simply create "a *possibility* of prejudice," but must be proven to work to the petitioner's "*actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170 (emphasis in original). Put another way, prejudice does not support relief of a procedural default in the absence of a showing of cause. *Carrier*, 477 U.S. at 494; *Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982).

The actual innocence exception "only applies in limited circumstances." *United States v. Jones*, 758 F.3d 579, 583 (4th Cir. 2014). The Fourth Circuit recently said in the context of a habeas case under 28 U.S.C. § 2254:[3] "A valid actual innocence claim 'requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.'" *Finch v. McKoy*, 914 F.3d 292, 298 (4th Cir. 2019) (quoting *Schlup v. Delo*, 513 U.S. 298, 325 (1995). Moreover, a petitioner must "'demonstrate that the

---

[3] "[T]he grounds for relief under § 2255 are equivalent to those encompassed by § 2254 [and] § 2255 was intended to mirror § 2254 in operative effect." *Davis v. United States*, 417 U.S. 333, 344 (1974).

totality of the evidence would prevent any reasonable juror from finding him guilty beyond a reasonable doubt, such that his incarceration is a miscarriage of justice.'" *Finch*, 914 F.3d at 298 (quoting *Teleguz v. Pearson*, 689 F.3d 322, 329 (4th Cir. 2012)).  It is an "exacting standard," based on a "'holistic judgment about all the evidence'. . . ." *Finch*, 914 F.3d at 299 (quoting *House v. Bell*, 547 U.S. 518, 539 (2006)).

In order to show "actual innocence," then, the petitioner "must demonstrate actual factual innocence of the offense of conviction, *i.e.*, that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." *Mikalajunas*, 186 F.3d at 494 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)); *see also Bousley*, 523 U.S. at 623.  Moreover, the petitioner must meet his burden by clear and convincing evidence.  *Mikalajunas*, 186 F.3d at 494.  In other words, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence."  *Jones*, 758 F.3d at 583 (emphasis added); *see Bousley*, 523 U.S. at 623.

## D.

"[T]he career offender provision is an advisory guideline promulgated by the United States Sentencing Commission.[1]"  *United States v. Furlow*, 928 F.3d 311, 314 (4th Cir. 2019).  In turn, the Sentencing Commission is an agency within the judiciary that "Congress has tasked with promulgating 'guidelines . . . for use of a sentencing court in determining the sentence to be imposed in a criminal case.'"  *Id.* at n.1 (quoting 28 U.S.C. § 994(a)(1)).

Unlike the mandatory sentencing provisions applicable to an Armed Career Criminal, 18 U.S.C. § 924(e), "the career offender provision creates no statutory penalty."  *Furlow*, 928 F.3d at 314.  However, a defendant who qualifies for an enhancement as a career offender "may be subject

to an increased guidelines offense level and criminal history category, which would result in an increased Guidelines range." *Id.* (citing U.S.S.G. § 4B1.1(b)).

To be sure, the guidelines are merely advisory, not mandatory. *See*, *e.g.*, *United States v. Booker*, 543 U.S. 220, 260-62 (2005); *Rita v. United States*, 551 U.S. 338, 361-62 (2007). But, it is equally clear that the sentencing guidelines are the "foundation of federal sentencing decisions." *United States v. Hughes*, ___ U.S. ___, 138 S. Ct. 1765, 1775 (2018). Indeed, the guidelines range generally serves as the "starting point" in the effort of a judge to fashion a reasonable sentence. *Freeman v. United States*, 564 U.S. 522, 529 (2011). Thus, the Supreme Court has described the sentencing guidelines as "the lodestone of sentencing." *Peugh v. United States*, 569 U.S. 530, 544 (2013); *see Molina-Martinez*, 136 S. Ct. at 1346.

Because of the "central role in sentencing" that attaches to the sentencing guidelines, an "error related to the guidelines can be particularly serious." *Molina-Martinez*, 136 S. Ct. at 1345; *see Feldman*, 2019 WL 6492488, at *3; *United States v. Winbush*, 922 F.3d 227, 231 (4th Cir. 2019); *United States v. Carthorne*, 878 F.3d 458, 469 (4th Cir. 2017). Indeed, a defendant who demonstrates an "erroneous, and higher, Guidelines range" will generally need "no further showing of prejudice . . . ." *Molina-Martinez*, 136 S. Ct. at 1345.

### E.

A defendant must know the direct consequences of his guilty plea in order for it to be knowing and voluntary. *Brady v. United States*, 397 U.S. 742, 755 (1970). The Supreme Court has explained that under Fed. R. Crim. P. 11, "the district court is required, as a precondition to acceptance of a guilty plea, to inform the defendant in person of the specified rights he or she may claim in a full criminal trial and then verify that the plea is voluntary by addressing the defendant."

*Gonzalez v. United States,* 553 U.S. 242, 247 (2008).  This "requirement is satisfied by a colloquy between the judge and the defendant, reviewing all the rights listed in Rule 11."  *Id.*

In evaluating the validity of a guilty plea, "courts look to the totality of the circumstances surrounding [it], granting the defendant's solemn declaration of guilt a presumption of truthfulness."  *Walton v. Angelone*, 321 F.3d 442, 462 (4th Cir. 2003) (citation omitted).  Notably, "[a] defendant's solemn declarations in open court affirming [a plea] agreement . . . 'carry a strong presumption of verity.'"  *United States v. White*, 366 F.3d 291, 295 (4th Cir. 2004) (quoting *Blackledge v. Allison*, 431 U.S. 63, 76 (1977)).  And, "because they do carry such a presumption, they present 'a formidable barrier in any subsequent collateral proceedings.'"  *White*, 366 F.3d at 295-96 (quoting *Blackledge*, 431 U.S. at 74).

Indeed, a court must be able to rely on a defendant's statements made under oath during a properly conducted Rule 11 plea colloquy.  *United States v. Bowman*, 348 F.3d 408, 417 (4th Cir. 2003).  Clearly, "a more lenient approach . . . 'would eliminate the chief virtues of the plea system—speed, economy, and finality.'"  *White*, 366 F.3d at 296 (citation omitted).

In *United States v. Lemaster*, 403 F.3d 216, 222 (4th Cir. 2005), the Fourth Circuit stated that, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements."  Put another way, "allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'"  *Id.* (quoting *Crawford v. United States*, 519 F.2d 347, 350 (4th Cir. 1975)).

Roberts was advised of his appellate rights at the guilty plea proceeding (ECF 545 at 27-28, 35) and at the conclusion of sentencing. ECF 399 at 14. Notably, "even valid appeal waivers do not bar claims that a factual basis is insufficient to support a guilty plea." *United States v. McCoy*, 895 F.3d 358, 364 (4th Cir. 2018). In other words, "a challenge to a plea's factual basis survives an appellate waiver." *Id.* However, "'[a] stipulated recitation of facts alone is sufficient to support a plea.'" *Id.* at 365 (quoting *United states v. Ketchum*, 550 F.3d 363, 367 (4th Cir. 2008)). And, a defendant is "bound by his sworn statements." *McCoy*, 895 F.3d at 365; *see United States v. Bell*, 359 F. App'x 442, 444 (4th Cir. 2010).

## IV.    Discussion

At sentencing, and without objection, Roberts was found to be a career offender under U.S.S.G. § 4B1.1. *See* ECF 399 at 4, 5. To qualify as a career offender, the federal offense of conviction must be either a felony crime of violence or a felony controlled substance offense; the defendant must have committed the underlying offense when he was at least eighteen years old; *and* the defendant must have "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1.

Of relevance here, U.S.S.G. § 4B1.2(b) defines "controlled substance offense" as follows:

> The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

Roberts was properly found to qualify as a career offender under U.S.S.G. § 4B1.1. As outlined earlier, at the time of his sentencing in this felony drug case, Roberts had two prior felony drug convictions in Maryland courts, and they satisfied § 4B1.2(b).

As to Case 95CR0051, "felonious possession of cocaine," Roberts argues it is not a proper career offender predicate. He is wrong.

For that offense, Roberts was sentenced to 14 years, with all but four years suspended. ECF 370, ¶¶ 39, 40; *see also* ECF 459-3; ECF 459-4. His commitment order reflects a conviction under Article 27, § 286 of the Maryland Annotated Code. *Id.* That provision has since been recodified at § 5-602 of the Criminal Law Article ("C.L.") of the Maryland Code. C.L. § 5-602 prohibits the felony offenses of distribution of a controlled dangerous substance ("CDS") and possession with the intent to distribute CDS.

C.L. § 5-101(f) defines "controlled dangerous substance." The drugs that appear on Schedule I and Schedule II are set forth in C.L. § 5-402 and C.L. § 5-403, respectively. Heroin is found in Schedule I, at C.L. § 5-402(c)(xv). Cocaine is designated as a Schedule II substance, at C.L. § 5-403(b)(3)(iv). C.L. § 5-608 establishes various penalties, and sets a penalty of imprisonment not exceeding 20 years for the first offense under § 5-602 if it involves a Schedule I or Schedule II narcotic drug. *See also Hurt v. State*, 2015 WL 5926870, at *4 (Md. Court of Special Appeals Sept. 4, 2015).

Both the Indictment in State court (ECF 459-1 at 4) and the Statement of Charges for the State offense (ECF 459-2) reflect a felony drug offense. In Count One, for example (ECF 459-1 at 4), Roberts was charged with possession of cocaine "in sufficient quantity to reasonably indicate . . . an intent to distribute . . . ."

According to Roberts, however, in light of the Supreme Court's decision in *Descamps v. United States*, 570 U.S. 254 (2013), he is not a career offender. In *Descamps*, the Supreme Court reiterated that the modified categorical approach set forth in *Taylor v. United States*, 495 U.S. 575 (1990), and *Shepard v. United States*, 544 U.S. 13 (2005), does not apply to a state statute with a

"single, indivisible set of elements." *Descamps*, 570 U.S. at 258. It determined that sentencing courts "may not use the modified categorical approach when the crime of which the defendant was convicted has a single, indivisible set of elements." *Id.*; *see, also e.g.*, *Moncrieffe v. Holder*, 569 U.S. 184, 190-92 (2013); *Begay v. United States*, 553 U.S. 137, 141 (2008); *James v. United States*, 550 U.S. 192, 202 (2008).

The Supreme Court stated in *Teague v. Lane*, 489 U.S. 288 (1989), that a "new rule" is one that "breaks new ground or imposes a new obligation on the States or the Federal Government." *Id.* at 301. In other words, "'[a] case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final.'" *Welch v. United States*, ___ U.S. ___, 136 S.Ct. 1257, 1264 (2016) (quoting *Teague*, 489 U.S. at 301) (emphasis in *Teague*). Applying this definition, the Supreme Court did not establish a new rule in *Descamps*. Rather, it "simply [reaffirmed] the *Taylor/Shepard* approach, which some courts had misconstrued." *United States v. Davis*, 751 F.3d 769, 775 (6th Cir. 2014). Indeed, the Supreme Court itself recognized in *Descamps* that it was relying on existing precedent. *Descamps*, 570 U.S. at 260 ("Our caselaw explaining the categorical approach and its 'modified' counterpart all but resolves this case."); *see also United States v. Morgan*, 845 F.3d 664, 668 (5th Cir. 2017) ("*Descamps* clearly relies on existing precedent. The Court explicitly says so and spends nearly the whole opinion explaining that viewpoint.).[4]

---

[4] Many courts have considered the question of whether the Supreme Court recognized a new right in *Descamps*, and have concluded that *Descamps* merely reiterated an existing principle. *See, e.g.*, *Morgan*, 845 F.3d at 667 ("We agree with our sister courts that *Descamps* did not establish a new rule."); *Mays v. United States*, 817 F.3d 728, 734 (11th Cir. 2016) ("*Descamps* did not announce a new rule—its holding merely clarified existing precedent."); *Headbird v. United States*, 813 F.3d 1092, 1097 (8th Cir. 2016) ("We agree with other circuits that the decision in *Descamps* was dictated by the general principles set forth in existing precedent and did not establish a new rule."); *Ezell v. United States*, 778 F.3d 762, 766 (9th Cir.) ("*Descamps* clarified application of the modified categorical approach in light of existing precedent."), *cert. denied*, ___

*Descamps* has no application here.  The discussion of use of the categorical or modified categorical approach generally arises in the context of determining whether an offense constitutes a violent felony or a crime of violence.  It is not applicable here, where the underlying predicate convictions were felony drug offenses.

Moreover, "a mistaken career offender designation is not cognizable on collateral review." *United States v. Newbold*, 791 F.3d 455, 459 (4th Cir. 2015) (citing *United States v. Foote*, 784 F.3d 931, 932-33 (4th Cir. 2015)), *cert. denied*, 135 S. Ct. 2850 (2015)).  And, as noted, in *Beckles v. United States*, __ U.S. __, 137 S. Ct. 886 (2017), the Court determined that the advisory sentencing guidelines are not subject to challenges under *Johnson v. United States*, ___ U.S. ___, 135 S. Ct. 225 (2015).  As the *Beckles* Court stated, "the advisory Guidelines do not fix the permissible range of sentences.  To the contrary, they merely guide the exercise of a court's discretion in choosing an appropriate sentence within the statutory range." *Id.* at 892.  In contrast, a defendant may challenge on collateral review an alleged erroneous determination that he qualified as an armed career criminal because, if so, he would have "'received a punishment that the law cannot impose upon him.'" *Newbold*, 791 F.3d at 460 (citation omitted).

_____

U.S. ___, 136 S. Ct. 256 (2015); *King v. United States*, 610 Fed. App'x 825, 828 (11th Cir.) ("As for *Descamps,* it is not a new rule. It merely applied prior precedent . . . ."), *cert. denied*, 136 S. Ct. 349 (2015); *United States v. Hopson*, 589 Fed. App'x 417 (10th Cir. 2015) ("*Descamps* did not recognize a new right, but rather applied existing doctrine."); *Davis*, 751 F.3d at 775 ("The Supreme Court in *Descamps* explained that it was not announcing a new rule . . . ."); *United States v. Williams*, No. 3:05-CR-173, 2016 WL 7155748, at *4 (E.D. Va. Dec. 7, 2016) ("'[T]he decision in Descamps was dictated by the general principles set forth in existing precedent and did not establish a new rule.'") (quoting *Headbird*, 813 F.3d at 1097) (alteration in *Williams*); *Scott v. United States*, RDB-08-0034, 2016 WL 3162766, at *3 (D. Md. June 7, 2016) (recognizing that *Descamps* does not recognize a new right or apply retroactively on review); *United States v. Owens*, 3:05-CR-264-HEH, 2016 WL 1562917, at *2 (E.D. Va. Apr. 15, 2016) ("*Descamps* . . . is not a new right that triggers the belated commencement provision of 28 U.S.C. § 2255(f)(3)."), *reconsideration denied*, No. 3:05-CR-264-HEH, 2016 WL 5019163 (E.D. Va. Sept. 16, 2016).

In the case at bar, Roberts entered into the Plea Agreement with the government, by which he pleaded guilty to one count. As the Supreme Court explained in *Hill*, 474 U.S. 52, "where . . . a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness [and intelligence] of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* at 56 (citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). In assessing whether counsel's performance was deficient, courts adopt a "strong presumption" that counsel's actions fell within the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

*Hooper v. Garraghty*, 845 F.2d 471 (4th Cir. 1988), also provides guidance. In that case, the Fourth Circuit described a petitioner's burden in the context of a post-guilty plea claim of ineffective assistance of counsel. The Court said, *id.* at 475 (quoting *Hill v. Lockhart*, 474 U.S. at 59): "When a defendant challenges a conviction entered after a guilty plea, [the] 'prejudice' prong of the [*Strickland*] test is slightly modified. Such a defendant 'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Accord Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1294-99 (4th Cir. 1992). Moreover, when, as here, a criminal defendant claims ineffective assistance of counsel after pleading guilty, he is "bound," absent clear and convincing evidence to the contrary, "by the representations he made under oath during a plea colloquy." *Fields*, 956 F.2d at 1299; *see Blackledge v. Allison*, 431 U.S. 63, 74-75 (1977).

Roberts has not met the test under *Hill*. In any event, he clearly qualified as a career offender. It follows that his lawyer was not ineffective in failing to challenge the career offender designation. It is also salient that Roberts was not sentenced as a career offender. Therefore, his claim of error and of ineffective assistance on this basis is devoid of merit.

Petitioner fares no better with his ex post facto claim. He was properly sentenced under the guidelines that were in effect at the time of the sentencing. Pursuant to 18 U.S.C. § 3553(a)(4)(A)(ii), the court must use the sentencing guidelines issued by the United States Sentencing Commission that are "in effect on the date the defendant is sentenced," with the exception that, "[i]f the court determines that use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the *ex post facto clause* of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed." U.S.S.G. §§ 1B1.11(a), (b)(1).

As the government puts it, "there was no basis for Petitioner's claim that the *ex post facto* clause was violated by the use of the 2012 Guidelines and any such objection by trial counsel would have been both meritless and fruitless." ECF 572 at 2.

To the extent of an issue in the calculation of the offense level based on Amendment 782, as Roberts claims in his motion to reduce sentence (ECF 541), this is not a claim of ineffective assistance of counsel. And, the Court has been advised that the OFPD is considering whether to represent Roberts in connection with his motion for sentence reduction. *See* ECF 572, ECF 573. That matter is pending.

### IV.    Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is required to issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant. A COA is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). In other words, unless

a COA is issued, a petitioner may not appeal the court's decision in a § 2255 proceeding.[5]  28

U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b).

A COA may issue "only if the applicant has made a substantial showing of the denial of a

constitutional right." 28 U.S.C. § 2253(c)(2); *see Buck v. Davis*, ___ U.S. ___, 137 S. Ct. at 773.

Where the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by

demonstrating that reasonable jurists would find the court's assessment of the constitutional claims

debatable or wrong. *See Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Slack v. McDaniel*, 529

U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003).

Petitioner has not made a substantial showing of the denial of his constitutional rights.

Therefore, I decline to issue a COA.

An Order follows.


Date:   December 16, 2019                     _____/s/_____
                                              Ellen Lipton Hollander
                                              United States District Judge

---

[5] The denial of a COA by the district court does not preclude Petitioner from seeking a
COA from the appellate court.